# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **DEBORAH E. ATKINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13CV00057 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | By: James P. Jones |
| **TRANSPORTATION,** | ) | United States District Judge |
| **COMMONWEALTH OF VIRGINIA,** | ) | |
| | ) | |
| Defendant. | ) | |

*Thomas E. Strelka, Strickland, Diviney & Strelka, Roanoke, Virginia, for Plaintiff; Sydney E. Rab and Katherine M. DeCoster, Assistant Attorneys General, Office of the Attorney General of Virginia, Richmond and Abingdon, Virginia, for Defendant.*

Deborah E. Atkins has sued her former employer, the Virginia Department of Transportation ("VDOT"), alleging that she was constructively discharged in retaliation for having engaged in activity protected under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2012). VDOT now moves to dismiss the Complaint for failure to state a claim upon which relief may be granted or, at the least, to strike the prayers for liquidated and punitive damages. For the following reasons, I will deny the Motion to Dismiss, but I will strike the prayers for liquidated and punitive damages.

# I. Factual Background.

In her Complaint, Atkins alleges the following facts, which, under familiar principles, I must accept as true for the purpose of the present motion. On July 23, 2010, Billy Joe Wolfe, an African-American and the Acting Superintendent for VDOT's Moccasin Gap Headquarters, "wrote a concise description of the hostile and discriminatory work environment he was experiencing" and forwarded it to Assistant District Administrator Mike Branham, Commissioner Greg Whirley, and Human Resources and Acting District Administrator Ken Brittle, in addition to the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 19, ECF No. 1.) Wolfe also filed an internal complaint with VDOT District Human Resources Manager Connie Hope. The plaintiff, Atkins, in her capacity as a Civil Rights Manager for VDOT's Bristol District, received this complaint four days later, and on August 10, 2010, she formally accepted it for investigation. At Atkins' request, William Hawkins, a VDOT Investigator in Hampton Roads, was assigned to assist in the investigation.

Atkins alleges she was pressured and intimidated by Branham, Brittle, and Hope in an attempt to hinder the investigation. She claims she was "subjected to daily hostility on the part of her co-workers and was ostracized by her co-workers." (Compl. ¶ 27, ECF No. 1.) In the course of the investigation, Atkins discovered that Wolfe was the lowest paid Acting Superintendent, and indeed was

paid less than some of his subordinates. Although ultimately successful in her efforts to increase Wolfe's compensation, she encountered significant resistance, particularly from Hope.

The Draft Investigative Report was prepared in November 2010, and on November 29, Brittle reproached Atkins for her findings. Later that day, Hope accused Atkins of "being a snitch," and Brittle suggested Atkins revise the report or "start polishing [her] resume." (Compl. ¶ 45, ECF No. 1 (internal quotation marks omitted).) On December 1, 2010, Brittle prepared his own version of the report and pressured Atkins to utilize it in place of her findings. Nonetheless, Atkins did not change the report, and on December 2, 2010, the following findings were approved for distribution:

> The evidence supports that Mr. Kilgore and Mr. Christian treated Mr. Wolfe in an unfair and disrespectful manner. Their actions were unprofessional and inappropriate and had a corrosive and disruptive effect on the work environment. The weight of the evidence suggests that Mr. Kilgore's and Mr. Christian's behavior towards Mr. Wolfe was motivated by their desire to have another employee in that role. The evidence does not show that Mr. Kilgore's and Mr. Christian's actions were racially motivated.

(Def.'s Br. Supp. Mot. Dismiss, Ex. C, 6, ECF No. 3-1.)[1] The report further concluded there was insufficient evidence to support claims of a racially offensive and hostile work environment, of pre-selection, or of retaliation.

---

[1] While the report itself was not exhibited with the Complaint, it referred to it. The defendant has supplied the text itself and there is no dispute as to its authenticity.

Atkins avers that she "was targeted and ultimately unfairly constructively discharged by VDOT in retaliation for finding merit in Mr. Wolfe's complaints." (Compl. ¶ 50, ECF No. 1.) Atkins reports her car was repeatedly vandalized while parked in the VDOT employee parking lot, with the first instance on January 21, 2011. That same month, Mike Russell was appointed the Bristol District Administrator, and in his first meeting with Atkins, he scolded her "for making the Bristol District 'look bad' and 'like a bunch of racists.'" (Compl. ¶ 55, ECF No. 1.) On April 22, 2011, Brittle sped toward her in his car, nearly striking her. On October 24, 2011, Atkins was "unfairly disciplined" for "falsification of a state record" and "unsatisfactory performance." (Compl. ¶ 64, ECF No. 1 (internal quotations marks omitted).) More specifically, she was accused of having a previous romantic relationship with Kilgore that biased the findings of the Wolfe investigation. As a result, Atkins received a Group III Written Notice, with three days pre-disciplinary leave and five days suspension. After engaging in the grievance procedure to contest the disciplinary action, the Grievance Hearing Officer determined that Atkins was the target of a "witch hunt with a united group of Agency personnel and witnesses out to penalize and discredit the Grievant." (Compl. ¶ 70, ECF No. 1 (internal quotation marks omitted).) The Hearing Officer recommended that her Written Notice be withdrawn and that she receive backpay,

---

Accordingly, I may consider the text of the report in determining the Motion to Dismiss. *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999).

but these recommendations were ignored. She alleges her constructive discharge occurred on January 6, 2012.

## II. MOTION TO DISMISS.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on such a motion, the court must regard as true all of the factual allegations contained in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must view those facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

To establish a prima facie case of retaliation, the plaintiff must show that: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) there was a causal connection between the protected activity and the adverse action. *Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir. 1997). VDOT argues that Atkins did not engage in a protected activity, nor did she suffer material adversity because of its conduct.

Title VII sets forth those activities that are protected against retaliatory action:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . , because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a). The adverb clauses therein — commonly referred to as the opposition and participation clauses — impose upon a plaintiff distinct requirements for a showing of protected conduct. "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citation omitted). To have engaged in a protected opposition activity, a plaintiff "must have held a reasonable, good faith belief that the employment practice [she] opposed was violative of Title VII." *Dea v. Wash. Suburban Sanitary Comm'n*, 11 F. App'x 352, 357-58 (4th Cir. 2001) (unpublished). Alternatively, "[a]ctivities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Laughlin*, 149 F.3d at 259. Importantly,

an individual engaged in participatory activity need not also oppose an unlawful employment practice, but is in fact protected by the mere act of participation. *See Kelley v. City of Albuquerque*, 542 F.3d 802, 815 (10th Cir. 2008) ("[R]equiring that the participant in an EEOC proceeding also oppose a retaliatory employment practice runs counter to the statutory scheme."); *see also Laughlin*, 149 F.3d at 259 n.4 ("[T]he scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause.").

Atkins ostensibly relies on the participation clause in alleging that "VDOT violated federal law by wrongfully retaliating against [her] when she properly participated in the racial discrimination investigation prompted by Mr. Wolfe's complaints." (Compl. ¶ 75, ECF No. 1.) Generally, participation in an employer's internal investigation is not considered participatory conduct protected under Title VII. *See Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 49 (2d Cir. 2012) ("Every Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause."). However, there is a limited exception. "Because participation in an employer's investigation conducted in response to a notice of charge of discrimination is a form of participation, indirect as it is, in an EEOC investigation, such participation is sufficient to bring the employee within the protection of the

participation clause." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999); *see also Martin v. Mecklenburg Cnty.*, 151 F. App'x 275, 279 (4th Cir. 2005) (unpublished). In the present action, Atkins' Complaint suggests that, prior to the investigation, the EEOC process had been initiated.[2] These limited facts preclude resolution of her claim, and further development of the record is required to determine the applicability of this exception.

VDOT also contends that "Atkins engaged in advocacy, for Wolfe, but within the context of her job responsibilities entrusted to her by VDOT. Therefore, hers was not oppositional activity under § 2000e-3(a)." (Def.'s Br. Supp. Mot. Dismiss 9-10, ECF No. 3.) There is a line of authorities that support the argument made by the defendant. The so-called "manager rule" was first articulated by the Tenth Circuit:

> In order to engage in protected activity under § 215(a)(3) [of the Fair Labor Standards Act], the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.

---

[2] "[O]n July 23, 2010, Mr. Wolfe wrote a concise description of the hostile and discriminatory work environment he was experiencing. Mr. Wolfe delivered this letter to Mike Branham, VDOT Assistant District Administrator, Greg Whirley, VDOT Commissioner, Ken Brittle, VDOT Human Resources and Acting District Administrator, *and also the EEOC*." (Compl. ¶ 19, ECF No. 1 (emphasis added).)

*McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996) (footnote omitted). The rule has been extended in application beyond the Fair Labor Standards Act to Title VII. *See Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787 (11th Cir. 2012) (unpublished) (holding "that a management employee that, in the course of her normal job performance, disagrees with or opposes the actions of an employer does not engage in 'protected activity.'"). The Fourth Circuit has not addressed the question, but several district courts within the circuit have applied the rule to dispose of Title VII retaliation claims where an employee was acting within the scope of her duties in investigating, or advising the employer about, discrimination claims. *See DeMasters v. Carilion Clinic*, No. 7:12-cv-580, 2013 WL 5274505 at *8 (W.D. Va. Sept. 17, 2013); *Rice v. Spinx Co.*, No. 6:10-01622-JMC, 2012 WL 684019 at *5 (D.S.C. Mar. 2, 2012); *Hill v. Belk Stores Servs., Inc.*, No. 3:06-cv-398, 2007 WL 2997556 at *1 (W.D.N.C. Oct. 12, 2007).

Even applying the prevalent "manager rule," the status of Atkins' conduct cannot be resolved on the present pleadings. It is plausible that Atkins stepped outside her role of representing VDOT in her refusal to amend the Final Investigative Report and in her opposition to Wolfe's pay disparity. Furthermore, while her report finds insufficient evidence of any unlawful employment practice under Title VII, it is not clear that Atkins lacked a reasonable, good faith belief that

she was opposing an unlawful employment practice in conducting the investigation and in remedying the pay disparity.

VDOT also contests Atkins' allegation that she was constructively discharged. "To establish constructive discharge, [the employee] must show that [her employer] deliberately made her working conditions intolerable in an effort to induce her to quit." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001) (citation and internal quotations marks omitted). "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the plaintiff to quit." *Taylor v. Va. Union Univ.,* 193 F.3d 219, 237 (4th Cir. 1999) (en banc).

VDOT contends that Atkins' working conditions were not so intolerable as to compel a reasonable person to resign. VDOT further argues that, even if she was subjected to intolerable working conditions, their creation was not a deliberate act by VDOT, insofar as the retaliatory conduct was not committed by employees empowered to take tangible employment action against Atkins.[3] These arguments cannot be disposed of on the pleadings. Her complaint contains allegations of vandalism, of fear of bodily injury, and of "a witch hunt" that resulted in improper

---

[3] The Supreme Court recently held that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim . . . ." *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439 (2013).

disciplinary action. Moreover, it is unclear at this stage if those responsible for Atkins' allegedly intolerable working conditions were of a supervisory status.

For these reasons, I will not foreclose the plaintiff's claims at this stage of the case. Of course, I cannot predict whether, upon further development of the facts, the plaintiff will be able to support those claims, either in summary judgment or at trial.

### III. MOTION TO STRIKE DAMAGES.

The motion to strike punitive and liquidated damages may be dealt with summarily. A plaintiff may recover punitive damages "against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.A. § 1981a(b)(1) (emphasis added). Atkins, therefore, cannot recover punitive damages against VDOT, as a state governmental agency. Moreover, there is no provision for liquidated damages under that section or under 42 U.S.C.A. § 2000e-5(g) of Title VII, and as such, there is no basis for recovery of liquidated damages in the present action. Accordingly, the motion to strike punitive and liquidated damages will be granted.

IV. Conclusion.

For the reasons stated herein, it is **ORDERED** as follows:

1. The Motion to Dismiss (ECF No. 2) is GRANTED IN PART AND DENIED IN PART;

2. The Motion to Dismiss is GRANTED as to any claim for punitive and liquidated damages and any claim for such relief is STRICKEN; and

3. The Motion to Dismiss is otherwise DENIED.

ENTER: December 19, 2013

/s/ James P. Jones
United States District Judge